(108 So. 545)

No. 27775.

## AUTOMOBILE FINANCE & SECURITIES CO. v. GLOBE INDEMNITY CO.

## In re GLOBE INDEMNITY COMPANY.

(May 3, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Insurance** ⏀425—**Purchaser's surrender of automobile to seller, who resold it, held act of conversion so as to render insurer liable to finance company for resulting loss.**

Where purchase-money notes secured by chattel mortgage were payable to automobile finance company, surrender of automobile by defaulting purchaser to seller who resold it was act of conversion by purchaser, so as to render insurer liable under policy indemnifying company against direct pecuniary loss by purchaser's conversion depriving company of security.

2. **Insurance** ⏀503—**Insurer, under policy indemnifying against loss by purchaser's conversion of automobile, depriving obligee of security for purchase-money notes, held liable only for value of security at time of conversion.**

Measure of insurer's liability under policy insuring against direct pecuniary loss by purchaser's conversion of automobile, depriving obligee of security for purchase-money notes, held not full amount of debt due from purchaser, but value of security at time of conversion.

3. **Insurance** ⏀665(4)—**Evidence held not to show that value of automobile at time of conversion equalled amount of defaulting purchaser's indebtedness, so as to entitle finance company to recover whole amount sued for from insurer.**

In action by automobile finance company on policy indemnifying it against loss by purchaser's conversion of automobile, depriving it of security for purchase-money notes, evidence *held* not to show that value of automobile at time of conversion equalled or exceeded amount of purchaser's debt, so as to entitle plaintiff to recover whole amount sued for.

Action by the Automobile Finance & Securities Company against the Globe Indemnity Company. Judgment for plaintiff was affirmed by the Court of Appeal, and defendant applies for certiorari or writ of review. Judgments set aside, judgment for plaintiff ordered, and case remanded for purpose stated.

Monroe & Lemann and Walter J. Suthon, Jr., all of New Orleans, for petitioner.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, for respondent.

ROGERS, J. On January 30, 1920, Duggan, Inc. (subsequently renamed the Hamilton Motor Corporation), a corporation dealing in automobiles in the city of New Orleans, sold a certain used Case automobile to Clarence E. Patton. The sale was made partly for cash and partly on terms of credit, the credit portion of the purchase price being represented by notes of the vendee secured by chattel mortgage on the automobile sold. These notes were purchased by the plaintiff company, which is engaged in the business of financing the sales of automobiles on credit. As a protection against loss by the larceny, embezzlement, or conversion by the purchasers of automobiles, the plaintiff company holds a blanket policy in the defendant company. The car sold to Patton was duly re-

ported as, and became a risk under, this policy. Patton, shortly after his purchase, became dissatisfied with the automobile, and, as he was manifesting an intention to default on his notes, it was repossessed by Peter Hamilton, vice president and manager of the Hamilton Motor Corporation, and kept in the establishment occupied by said company. This was with plaintiff's knowledge. The first two notes were paid shortly after their maturity, but the other notes were not paid and are involved in this suit. Subsequently, without the knowledge of the plaintiff company, Hamilton delivered the car for sale to the Lapps Motor Company, which sold the automobile as unincumbered. After being resold two or three times the car was removed from the state, and the chattel mortgage became extinguished. The plaintiff company then brought this suit on the policy, alleging that it had been deprived of its security because of an act of conversion on the part of Patton, the purchaser named in the bond, and praying that it recover from the defendant company the loss it had sustained, which it alleged was the principal of the notes, with interest and attorney's fees, and an additional amount expended in the employment of detectives to search for the missing vehicle. Defendant denied there was any conversion, and averred that the sale of the car which caused the plaintiff company to lose its chattel mortgage was not the act of the mortgage debtor, but of a third person, for whose integrity it was not responsible. It also contended that, in any event, the extent of its liability was the value of the automobile at the time it was sold and not the amount due on the unpaid notes.

The district court gave plaintiff judgment for practically the amount sued for. This was affirmed by the Court of Appeal, and the case is now before us under a writ of review.

Under the terms of the contract herein sued on, the obligation of the defendant company (as surety) is to indemnify the plaintiff company (as obligee):

"* * * Against such direct pecuniary loss as the obligee may sustain by any act of larceny, embezzlement, or conversion of the purchaser, whereby the obligee is deprived of the security of any motor vehicle, listed in any schedules made a part hereof, as hereinafter provided, either directly or through the connivance with others on the part of any purchaser named in the said schedules."

The foregoing obligation is subject to the following, among other conditions: -

"No. 4. The liability of the assured on account of any purchaser is limited to the amount of the purchase price unpaid at the time of any larceny, embezzlement or conversion aforesaid, and such liability shall not exceed the sum set opposite the name of the purchaser in any schedule."

[1] We agree in the conclusion reached by the Court of Appeal that the defendant company is liable under its contract. The act of sale, notes, and chattel mortgage were executed at the office of the plaintiff company. With the consent of Hamilton, the representative of the vendor, the notes were made payable directly to the order of the plaintiff company. Patton is bound to have known at that time and also when he permitted Hamilton to retake possession of the automobile that neither Hamilton nor his company had any right of ownership in the car. This information was also in Hamilton. As stated in the very able opinion of the Court of Appeal, "To deliver or surrender the car to Hamilton was therefore a reckless disregard of plaintiff's rights to the security granted under the mortgage, and was plainly an act of conversion, such as was contemplated under the bond." When Patton surrendered the car to Hamilton with instructions to sell it, he constituted Hamilton as his agent, and committed "the direct and initial act of conversion which caused the sale, although made by Hamilton, to be imputed to Patton, his principal."

[2] While we are in accord with the Court

of Appeal on the issue of defendant's liability, we are unable to assent to its ruling upon the measure of plaintiff's recovery. The judgment under review allows plaintiff the entire principal of the notes, with interest and attorney's fees, together with a small amount expended for detective service. The judgment is based upon the proposition that, under the terms of the contract, the measure of defendant's liability is the full amount of the debt due plaintiff, and not merely the value of the security at the time of its conversion.

Under the provisions of the policy, the obligation of the insurer, in the event of a conversion, is to indemnify the insured against such "direct pecuniary loss" as the latter may sustain by "being deprived of the security." There is nothing is this agreement, as we understand it, which imposes upon the obligor the burden of discharging the entire indebtedness of the maker of the chattel mortgage notes. On the contrary, its purpose is to protect merely a secured creditor in the loss he might suffer by reason of the disappearance of his security.

Paragraph 4 of the policy, quoted, supra, and which is referred to in its opinion by the Court of Appeal, does not refute, but sustains, this interpretation of the contract, since it provides that the liability of the insurer shall be limited to the amount of the debt unpaid at the time of the conversion. In other words, it clearly shows that the liability of the insured, except as to its maximum amount, is not to be considered as a fixed and invariable figure. This interpretation of the contract is also supported by the language of paragraph 8, providing that upon payment of the loss by the insurer it shall be subrogated to the rights of the insured against the defaulting purchaser, and that where the loss sustained by the insured shall exceed the liability of the insurer, they shall share pro rata in any net recovery in the proportion the amount of the payment under the policy bears to the total shortage. It is clear there would have been no necessity for incorporating this provision in the agreement if the full amount of the unpaid indebtedness was to be the measure of the insurer's liability, since in that event the insurer would be subrogated to the whole debt when he paid it and the insured would have no interest whatever in any collections subsequently made from the chattel mortgage debtor.

[3] Our conclusion is, that under the terms of its policy the defendant company undertook to indemnify the plaintiff company merely against the loss of its security and not for the full amount of its debt. Necessarily, if the record in this case showed that the value of the automobile at the time of its conversion equalled or exceeded the amount of the debt, the plaintiff company would be entitled to recover the whole amount sued for. The record, however, does not show this. There is no evidence whatever of the value of the car at the time it was turned over for sale by Hamilton to the Lapps Motor Company. From a copy of a letter dated July 29, 1920, written by the plaintiff company to the defendant company, offered in evidence by plaintiff, it appears that the automobile in question was sold to a man named Wolf, who gave in exchange a used Chalmers car, and agreed to pay $200 in addition. Wolf never paid the cash portion of the purchase price, because he found the Case automobile (which be bought) in bad condition, necessitating the expenditure on his part of several hundred dollars for its repair. This is the only reference in the record, so far as we are able to find, to the value of the car at the time of its disposal by Hamilton. It indicates that the automobile, at the time of its wrongful resale, was not worth the full amount of plaintiff's debt.

For the reasons assigned, the judgments of the Court of Appeal and district court are

set aside, and it is now ordered that there be judgment in favor of plaintiff, Automobile Finance & Securities Company, and against defendant, Globe Indemnity Company, in an amount equal to the value of the automobile referred to in plaintiff's petition and covered by the policy issued by the defendant company, at the time of its sale by the Lapps Motor Company, with legal interest thereon from the date of said sale until paid, and that this case be remanded to the district court for the purpose of ascertaining and fixing the said value of the automobile in question.

It is further ordered that the plaintiff company pay the costs of these proceedings. and that the defendant company pay all other costs.